Filed 2/27/24  P. v. Cervantes CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEXIS V. CERVANTES,<br><br>    Defendant and Appellant. | D081281<br><br><br>(Super. Ct. No. SCD294710) |


APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Britton Donaldson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Paige B. Hazard and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

Alexis V. Cervantes appeals from a judgment following a conviction on one count of inflicting corporal injury to a dating partner in violation of

section 273.5, subdivision (a), of the Penal Code.[1] Cervantes acknowledges that he stabbed his boyfriend, B.D. But he contends that he did so in self-defense and that the conviction should be reversed because there is no substantial evidence that he acted *other* than in self-defense. The Attorney General disagrees, and so do we. Hence we affirm the conviction.

B.D. sustained his injuries inside a tent that he shared with Cervantes, his dating partner, in a homeless encampment and in which the two of them had quarreled and fought shortly before the stabbing. Although there were no eyewitnesses to the quarrel, to the fight or to the stabbing that ensued, two individuals occupying the neighboring tent testified at trial that they had heard, that night, what sounded like two men scuffling in the tent, followed by a period of "complete[] quiet" estimated to have lasted between 2 and 10 minutes, and then cries along the lines of " 'You stabbed me!' " or " 'Get off me. Help. I've been stabbed.' "

These two witnesses also testified that, during some portion of this time, they (in the case of one witness) heard or (in the case of the other witness) saw the tent moving or shaking "pretty drastically." One of these witnesses further testified that, shortly after the events described above, he had seen the two men exit the tent, with B.D. bleeding and Cervantes helping B.D. This same witness also testified that Cervantes had said, "Don't call the police."

A trauma surgeon testified that the injuries sustained by B.D. included multiple severe stab wounds requiring emergency surgery and that one of these wounds involved "evisceration, meaning an inside the body organ is now in the outside the body world" and was potentially life-threatening. A police officer testified that he had interviewed Cervantes on the night of the

---

[1] All statutory references in this opinion are to the Penal Code.

2

stabbing, and that Cervantes had given multiple different accounts, each of which was vague and involved Cervantes being away from the tent at the time of the stabbing. The officer testified that Cervantes had said nothing about having been attacked by B.D. or about having acted in self-defense. In addition, a former romantic partner of Cervantes testified about an incident, several years earlier, in which he had strangled her.

Testifying in his defense, Cervantes acknowledged having strangled the former romantic partner and admitted that he had done so other than in self-defense. He also acknowledged having stabbed B.D. In his telling, it was B.D. who initiated the scuffle and who introduced the knife:

> "After the verbal [argument], he started striking me . . . , and we eventually ended up on the floor. I remember telling him to stop and get off of me so we could talk. [¶] And at one point it stopped, and I felt weird. So when I looked down – because he was still directly above me – I saw him, like, with a knife. I think he was trying to open it or something. [¶] And I believe I – at that moment I tried to take it away from him. And I eventually – I did end up taking it away from him. [¶] And I – I guess I just used it at one point."

Cervantes further testified that he was "able to get th[e] knife away without the blade ever touching" him.

Regarding the aftermath of the stabbing, Cervantes testified that he tried to stop B.D.'s bleeding and asked one of the witnesses mentioned above to call for an ambulance. As for his encounter with the police that night, Cervantes acknowledged under questioning by defense counsel that, "for a number of reasons," he had been less than forthcoming:

> "For one, I wasn't really too focused on what he was asking or what anybody was telling me. I was kind of just focused on making sure that [B.D.] was all right and that he got the attention that he needed.

3

> "And when I did answer, I just more or less kind of gave him, like, vague answers so he would just stop questioning me and just, like, leave me alone. I didn't really feel like talking to – to anybody at that point."

Then, on cross-examination, Cervantes acknowledged that the statements he had made to the police regarding his whereabouts at the time of the stabbing had been lies.

The jury rejected Cervantes's version of events and found him guilty of having inflicted corporal injury to a dating partner in violation of section 273.5, subdivision (a). Thereafter, Cervantes timely appealed.

The sole ground on which Cervantes premises his appeal is a contention that the evidence at trial was insufficient to sustain a conviction under section 273.5, subdivision (a), because that evidence did not suffice to establish beyond a reasonable doubt that he had acted other than in self-defense. As the court properly instructed the jury:

> "The defendant acted in lawful self-defense if:
>
> "One. The defendant reasonably believed that he was in imminent danger of suffering bodily injury;
>
> "Two. The defendant reasonably believed that the immediate use of force was necessary to defendant against that danger;
>
> "And three. The defendant used no more force than was reasonable and necessary to defend against that danger.
>
> "[¶] . . . [¶]
>
> "The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden, you must find the defendant not guilty."

Thus the question at hand is whether there was substantial evidence—that is, evidence that is reasonable, credible, and of solid value (see *People v. Mincey* (1992) 2 Cal.4th 408, 432; *People v. Wolfe* (2018) 20 Cal.App.5th 673,

4

681)—supporting the jury's conclusion that the three elements enumerated above had been satisfied.

We conclude the answer to this question is, yes.[2]

Although the jury's conviction of Cervantes tells us that it did not believe Cervantes acted in self-defense, it could well have credited portions of his testimony in arriving at that conclusion.[3] From the testimony that Cervantes had succeeded in wresting the knife away from B.D. without being touched by the blade, and from the testimony of the people in the adjacent tent that a significant period of silence had elapsed between the initial scuffle and B.D.'s cry of "You stabbed me!" the jury could reasonably have inferred that Cervantes had disarmed B.D., and that Cervantes had had an adequate opportunity to withdraw before he stabbed B.D. On this basis, the jury could reasonably have found (with regard to the first element of self-defense) that

---

[2]	This is not to say the evidence supporting conviction was unblemished. By way of example, one of the two witnesses from the neighboring tent testified that she had "issues with memory" due to "a severe car wreck," the other such witness acknowledged that he smokes marijuana every day, and that same witness contradicted his own testimony regarding whether Cervantes had said not to call the police. But, in applying the substantial evidence standard of review, "[w]e do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 671.) Rather, as Cervantes acknowledges in his opening brief: " 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' (*People v. Zamudio* (2008) 43 Cal.4th 327, 357, citing *People v. Bolin* (1998) 18 Cal.4th 297.)"

[3]	The jury was instructed that it could believe "all, part, or none of any witness's testimony," and that in evaluating such testimony, it could consider whether the witness had "a personal interest in how the case is to be decided" and whether the witness made "a statement in the past that is consistent or inconsistent with his or her testimony."

Cervantes did not reasonably believe that he was in imminent danger of suffering bodily injury or (with regard to the second element) that immediate use of force was not necessary to defend against such a danger. Further, based on the severity of B.D.'s resulting injuries, the jury could reasonably have found (with regard to the third element) that the force Cervantes used was excessive. Such findings, moreover, could have been reinforced by Cervantes' admission that he had previously strangled a romantic partner other than in self-defense. Further, the jury could have considered that Cervantes's evasive and dishonest responses to questioning by the police revealed consciousness of guilt. On this record, there was sufficient evidence from which the jury could have concluded beyond a reasonable doubt that Cervantes had not acted in self-defense when he stabbed B. D.

## DISPOSITION

The judgment is affirmed.

KELETY, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

6